**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**QUINTIN WRIGHT**                                                                                       **PLAINTIFF**

**VS.**                                                **CAUSE NO. 3:21-CV-00047-MPM-RP**

**CORECIVIC INC., CORECIVIC OF TENNESSEE, LLC;
and JOHN and JANE DOES 1-100**                                **DEFENDANTS**

## <u>ORDER</u>

This cause comes before the court on the motion of defendant Corecivic, Inc. for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Quintin Wright has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This case presents both state and federal claims arising out of an assault which occurred on March 1, 2020 at the Tallahatchie County Correctional Facility (TCCF) in Tutwiler, Mississippi. Plaintiff was a detainee at TCCF at the time, and he alleges that he sustained significant injuries after suffering a completely unprovoked attack at the hands of Rodarius Miller, who was then employed as a guard at the facility. In considering the summary judgment motion, this court begins with the fact that defendant's own description of the assault leaves no doubt regarding its lack of justification. Specifically, defendant describes the assault as follows:

> On March 1, 2020, Wright was in the pill call line waiting to receive his nightly medication. He was joking with another inmate, who is bald, noting the inmate had a "big forehead." Officer Miller was standing across the hall speaking to two female correctional officers, Shanteka Moorehead and Mishay Hampton; Miller had his back to Wright. Wright later heard from others that Miller and Moorehead may have been romantically involved. Suddenly, Miller turned to face Wright and said, "Don't talk to her like that."
> Wright responded to Miller to clarify: "I wasn't talking to her, but I can joke with whoever I want." Moving closer to Wright, who remained standing on the wall, Miller

1

> said, "You think you're tough." Acting "irritated," Miller started getting "really close" to Wright, "acting mad and like he wanted to fight, trying to provoke [Wright], asking [him], 'What you trying to do then?'" According to Wright, Miller was "acting like [they] were on the streets and he was trying to have some kind of street fight" with Wright. Seconds later, Officer Hampton accessed her facility radio and called a Code to alert response staff of a potential incident. Officer Moorehead ultimately directed Wright to the end of the pill call line, putting some distance between the men. Wright "did what [he] was told, not only to get away from [Miller] but to walk away from the situation." But Miller followed Wright, as Hampton and Moorehead continued to intervene. Miller suddenly punched Wright's face with his fist. In the seconds that followed, Miller punched Wright "three, four times probably, while Wright "windmilled" his arms and "rammed" his body toward Miller in an attempt to defend himself. Just ten seconds after the first physical contact between Miller and Wright, CoreCivic's response staff rushed onto the scene and intervened. Miller continued to pursue Wright, briefly escaping his coworkers' efforts to stop him and "slammed [Wright] on the ground." CoreCivic response staff then successfully detained Miller and separated him from Wright. Following the incident, once the hallway was secure, both Wright and Miller were taken for medical evaluation.

[Defendants' brief at 3-5].

Defendant thus admits that Miller unjustifiably assaulted plaintiff, although, as discussed below, it maintains that this assault was outside the course and scope of his employment and that, as such, it may not be held vicariously liable for it. In considering the summary judgment motion, however, it should be emphasized that Miller's actions in this case are not the only ones for which Corecivic must answer in this case. To the contrary, defendant faces potential liability for the actions of two other employees who, plaintiff alleges, failed to adequately intervene to stop the attack once it began. As to these employees, plaintiff alleges in his complaint that:

> 12. Correctional officers Moorehead and Hampton were present when the assault occurred. At the time, Moorehead and Hampton were acting in the course and scope of their employment. Moorehead and Hampton failed to intervene and prevent Miller from assaulting the Plaintiff.

[complaint at 4].

In the court's view, plaintiff's claims against Corecivic arising out of Moorehead and Hampton's actions present the clearest legal path for plaintiff to establish triable jury issues in

this case, since, as to these (former) employees, defendant is not able to avail itself of the Mississippi precedent which, as discussed below, makes it difficult for plaintiffs to establish vicarious liability on the part of employers for intentional torts committed by their employees. In its brief, defendant seems reluctant to discuss Moorehead and Hampton's actions in this case, and this strikes this court as being understandable, in light of its admission (in a footnote) that:

> To the extent Plaintiff seeks to hold CoreCivic liable for negligent hiring and retention as to the other two female officers involved in the subject incident, these claims likewise fail. Moorehead and Hampton were terminated following the subject incident for post-incident misconduct of falsifying their initial incident statements, in an apparent effort to defend Miller's unjustified assault. However, the post-incident misconduct of these female officers has no causal link whatsoever to Plaintiff's alleged injuries or the subject incident. Therefore, it is not relevant to Plaintiff's negligent hiring and retention claim.

[Brief at 21, fn. 10]. Defendant thus concedes that it terminated Moorehead and Hampton for "post-incident misconduct of falsifying their initial incident statements, in an apparent effort to defend Miller's unjustified assault," and this fact makes it exceedingly difficult for it to argue that there are no triable jury issues regarding its liability for their actions in this case.

In so stating, this court notes that plaintiff alleges in his complaint that Moorehead and Hampton were involved in the altercation between him and Wright from the very start, writing that:

> On or around March 1, 2020 the Plaintiff was injured without provocation by an employee of CoreCivic Inc. and/or CoreCivic of Tennessee, LLC. (collectively referred to as CoreCivic hereafter), Rodarius Miller (Miller). Plaintiff was waiting in the pill call line, joking with one of the other inmates. Miller mistook a joke to an inmate as if it were directed towards [Moorehead], who Plaintiff later learned was Miller's girlfriend. After telling the Plaintiff not to speak to Moorehead that way, Plaintiff told Miller that he was not talking to her. Nonetheless, Miller proceeded to get aggressive with Plaintiff, puffing out his chest out and asking Plaintiff if he thought that he was tough. Miller is much larger than the Plaintiff. Morehead and correctional officer Mishay Hampton (Hampton) told Plaintiff to go to the back of the line and he complied with that order. However, Miller pursued the Plaintiff and struck him at least six times with his fist. After failing to defend himself by swinging back, and after the other officers failed to stop the assault, Miller picked up the Plaintiff and slammed him onto the ground and onto his bad back. While on the ground, Miller struck Plaintiff many more times before he was finally

3

    removed successfully by multiple staff members. At the time, Miller was acting in his course and scope of employment with CoreCivic.

[Complaint at 3].

  Plaintiff thus alleges that "after the other officers failed to stop the assault, Miller picked up the Plaintiff and slammed him onto the ground and onto his bad back," and he argues that this lack of response by Moorehead and Hampton was negligent. This court takes judicial notice of the fact that fights involving inmates are a common occurrence at prisons, and it seems clear that responding to those fights is well within the course and scope of a correction officer's duties. Plaintiff plainly alleges that Moorehead and Hampton failed to meet their duties of care in this regard, and, while this court does not regard the evidence of their negligence as being overwhelming by any means, it concludes that fact issues do exist in this regard. In so stating, this court notes that the fact that these two former employees lied regarding the incident, out of apparent loyalty to Miller, considerably strengthens plaintiff's argument that summary judgment would be improper as to their actions. Clearly, when an employer concedes that two of its employees lied regarding the incident for which it is sought to be held vicariously liable, this makes it exceedingly difficult for it to argue that no triable jury issues exist regarding the nature of their actions. Moreover, plaintiff has a very reasonable jury argument that employees who demonstrated a willingness to lie to protect Miller after the fact might well have been less than motivated to take actions against him while his assault was actually taking place.

  In light of the foregoing, this court concludes that triable jury issues exist regarding defendant's liability for Moorehead and Hampton's actions, and this means that a trial will be required regardless of whether defendant faces liability for Miller's intentional assault upon plaintiff. In cases where it is clear that a trial will be required regardless, this court's general

practice is to reserve a ruling on partial liability issues until the directed verdict and/or jury instruction stage of trial, and it will follow that practice here.

While this court will thus reserve a formal ruling on this issue for trial, it will note, for the record, its present impressions regarding defendant's liability for Miller's actions in this case. This presents a somewhat difficult legal issue, since it appears that Mississippi appellate authority regarding the vicarious liability of employers for intentional assaults by their workers is rather vague and imprecise. In describing Mississippi precedent in this context, the Mississippi Court of Appeals wrote in a very recent decision that:

> An employee will be deemed to be acting outside the scope of his employment when his actions, though taken while at work, are unrelatable to his employment. If an individual is performing duties within the course and scope of their employment but deviates from those authorized duties and commits an unauthorized act, not incidental to their employment, such act may be found to be outside the scope of their employment. *Cockrell v. Pearl River Valley Water Supply Dist*., 865 So. 2d 357, 361-62 (Miss. 2004). For example, in *Howse ex rel. Blasingame v. Brentwood Behavioral Healthcare of Mississippi,* 139 So. 3d 125, 130 (Miss. Ct. App. 2014), we found that an employee at Brentwood was not acting within the course and scope of his employment when he assaulted Howse, a patient at the facility. Id. at 130.

*Sturkin v. Mississippi Ass'n of Supervisors, Inc*., 315 So. 3d 521, 531–32 (Miss. Ct. App. 2020). While the Court of Appeals in *Sturkin* thus noted that employers are frequently absolved of liability for assaults by their employees, it also cautioned that:

> But "unauthorized acts do not necessarily fall outside the scope of employment when they are of the same general nature as the conduct authorized or incidental to that conduct." *Townsend v. What a Combo Inc.,* 281 So. 3d 43, 47 (Miss. Ct. App. 2019). Tortious acts incidental to the authorized conduct fall within the course and scope of employment. But unauthorized acts do not necessarily fall outside the scope of employment when they are of the same general nature as the conduct authorized or incidental to that conduct.
> Often a jury must decide whether an employee's acts are incidental to their regular job duties. For example, in *Partridge v. Harvey*, 805 So. 2d 668 (Miss. Ct. App. 2002), two rent-to-own store (Bestway) employees broke into Partridge's home to repossess furniture and appliances after Partridge had become delinquent in his payments. *Id.* at 669. While doing so, the employees also took other items from Partridge's home. *Id.* at 670 The employer claimed that he could not be held responsible for the criminal acts of his

5

> employees. *Id*. at 669. The circuit court granted the employer's motion for summary judgment. *Id*. But after reviewing the facts, we reversed and remanded the case, saying:
>> The allegation here is that Bestway's employees, involved in a business that requires the physical seizure of property, took the opportunity of Partridge's absence to break into his home. Further, instead of just taking the property that might have been subject to repossession, other items were taken as well. Access to the inside of the house and physical taking of property were incident to Bestway's business, even though we accept that Bestway wanted the access and seizure to be performed within the constraints of the law. Consequently, we find that a jury issue existed of whether this means of gaining access and this measure of seizure were reasonably incidental to Bestway's business.
>
> *Id.* at 672.

*Sturkin*, 315 So. 3d at 532.

In the court's view, standards such as whether "unauthorized acts" are "are of the same general nature as the conduct authorized or incidental to that conduct" can be difficult to apply precisely, particularly when the job in question falls within a "gray area" of sorts. In this vein, this court notes that, in carrying out the assault in this case, Miller was not acting in his capacity as a waiter or office clerk, but, rather, as a prison guard. Without question, a prison guard is, at times, called upon to use physical force against inmates in responding to disturbances, and this fact distinguishes this particular job from many other occupations, where resort to physical force is essentially never required. This renders a ruling on defendant's liability for Miller's actions in this case a rather difficult one. In eventually ruling upon this issue at trial, this court must carefully consider *Sturkin*'s observation that:

> In order to relieve a master from liability for the servant's acts, on the ground that the servant had deviated from his service, the deviation must be so substantial as to amount to an entire departure therefrom and be for purposes entirely personal to the servant. Id. **Where there is any doubt, the issue must be submitted to the jury with appropriate instructions.** *Id.; see also Allen v. Ritter*, 235 So. 2d 253, 255 (Miss. 1970) (proof presented on the issue of liability of principal for agent's actions required resolution by a jury)

*Id.* at 532 (emphasis added).

6

In the court's view, the Court of Appeals' admonition that "where there is any doubt, the issue must be submitted to the jury with appropriate instructions" quite arguably dictates the proper path forward in this case. In light of this language, this court is presently inclined to conclude that a jury should decide this issue since, while defendant arguably does have a robust defense to its liability for Miller's actions, it is not prepared to say that there exists "no doubt" in this context. In so stating, this court notes that defendant writes in its summary judgment brief that "[i]t is suspected that Miller's misconduct may have been motivated by a secret love interest in Ms. Moorehead, but there is no direct evidence confirming the two were in a relationship." [Brief at 16]. In the court's view, this is an important unresolved fact issue, since it seems clear that any finding that Miller acted out of feelings of romantic jealousy would make it more difficult for plaintiff to establish vicarious liability arising out of his actions. On the other hand, absent such a personal motivation, one arguable interpretation of the facts of this case is that Miller, acting out of some deeply misguided attempt to "maintain discipline" at the facility, believed that he witnessed an inmate disrespecting a fellow guard and sought to confront him for having done so. While there is no question that Miller's actions were highly inappropriate under any reading of the facts, it seems clear that plaintiff's attempts to hold Corecivic vicariously liable would be rendered more difficult if a romantic motivation for Miller's actions were clear.

By defendant's own admission, there exists no clear evidence regarding whether such romantic feelings actually motivated Miller's actions, and it seems likely at this juncture that a jury will be required to make a determination in this regard. In so stating, this court does not rule out the possibility that it might grant at least partial directed verdict on vicarious liability issues, if the evidence at trial turns out to be particularly favorable to defendant in this regard. This court is not prepared to grant summary judgment on this issue, however, based partly on the fact

7

that defendant admits that plaintiff suffered a completely unjustified attack by one of its employees in this case. In light of this concession, this court is not at all troubled by the notion that defendant will be forced to defend itself before a jury, and it submits that a reasonable employer might well feel an obligation to offer some compensation for the injuries which plaintiff suffered at the hands of one of its employees, due to no fault of his own. It is ultimately defendant's choice whether to offer such compensation, but, at any rate, this court concludes that triable fact issues exist regarding Corecivic's liability in this case, and its motion to dismiss the state law claims against it will be denied. Plaintiff concedes that the federal law claims which he raised should be dismissed, and it will be so ordered.[1]

Having ruled upon the summary judgment issues in this case, this court now turns to plaintiff's motion to strike the expert testimony of Don Stewart. Stewart is the Senior Director of Security Operations and Intelligence of Corecivic and offers his opinions based on his knowledge of Corecivic's policies regarding training of employees. In his Summary of Opinions, Stewart offers statements regarding Corecivic policies and training, including those related to the use of force, de-escalation, and the employee Code of Conduct. This Court has previously recognized its duty "to screen a proffered expert's testimony to determine admissibility." *Childs v. Entergy Miss., Inc.*, 2009 WL 2508128, *2 (N.D. Miss. Aug. 13, 2009). "Expert testimony is not admissible unless the expert is qualified and the opinion is scientifically valid and methodologically sound." *Miller v. Genie Indus., Inc.,* 2012 WL 161408, at *4 (N.D. Miss. Jan. 19, 2012) (*citing Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592-93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

---

[1] This court notes for the record that, if plaintiff had not conceded this point, it would have dismissed these federal claims based on a conclusion that the rigorous *Monell* standards applicable to private prisons have not been met.

Regarding an expert's qualifications, "[d]istrict courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.' " *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (citing Fed. R. Evid. 702).2 "A proposed expert does not have to be 'highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.' " *Bryant v. 3M Co.,* 78 F. Supp. 3d 626, 631 (S.D. Miss. 2015) (*quoting Huss v. Gayden,* 571 F.3d 442, 452 (5th Cir. 2009)). Moreover, "[a] lack of personal experience ... should not ordinarily disqualify an expert, so long as the expert is qualified based on some other factor provided by Rule 702: 'knowledge, skill, experience, training, or education.' " *U.S. v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013) (quoting Fed. R. Evid. 702) (emphasis in original). The Court also notes that the proponent of expert testimony bears the burden to establish the witness's qualifications by a preponderance of the evidence. *U.S. v. Griffith*, 118 F.3d 318, 322 (5th Cir. 1997).

Turning to the substance of the expert's proposed testimony, "the overarching concern is whether or not it is relevant and reliable." *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007). Regarding relevance, the testimony must "assist the trier of fact to understand the evidence or determine a fact in issue[.]" *Childs,* 2009 WL 2508128, at *2. The relevance requirement is satisfied "where there is a sufficient relationship between the subject of the proffered testimony and the facts of the case, so that the testimony aids the factfinder in resolving a disputed issue." *Id.* (additional citations omitted). As to reliability, "[a] party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Smith,* 495 F.3d at 227

(*citing* Fed. R. Evid. 702). "Proposed testimony must be supported by appropriate validation— i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertains to 'scientific knowledge' establishes a standard of evidentiary reliability." *Reed v. Flores,* 2010 WL 5051474, at *2 (N.D. Miss. Dec. 3, 2010) (*quoting Daubert,* 509 U.S. at 590). The Court must also "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (*quoting Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)) (additional citations omitted). Additionally, "[t]he party offering the expert testimony bears the burden of proving that the testimony is admissible." *Miller,* 2012 WL 161408, at *4.

With this authority in mind, this court turns to plaintiff's *Daubert* motion, in which he seeks to strike multiple opinions offered by Stewart. After considering plaintiff's arguments, this court finds one objection to be so clearly meritorious that it is prepared to grant it at this juncture, and it will reserve a ruling on the remaining objections at trial. In particular, this court agrees with plaintiff that Stewart's proposed testimony, after reviewing videotape of the altercation in this case, that Miller's body language did not demonstrate that he felt threatened by plaintiff constitutes "state of mind" evidence which other courts have determined is the province of a jury, and not expert witnesses.

In *CMI- Trading, Inc. v. Quantum Air, Inc.,* 98 F.3d 887, 890 (6th Cir. 1996), for example, the Sixth Circuit wrote that "[a]n expert's credentials do not place him in a better position than the [trier of fact] to draw conclusions about a defendant's state of mind," and numerous other courts have reached a similar conclusion. *See, e.g. Fisher v. Halliburton*, 2009 U.S. Dist. LEXIS 118486 (S.D. Tex. 2009), *Charalambopoulos v. Grammer*, 2017 U.S. Dist.

10

LEXIS 33488 (N.D. Tex. 2017).  In his expert report, Stewart opines that Miller's "body language and repeated refusal to allow fellow coworkers to intervene to stop the incident suggests that he had a personal goal to pursue a physical altercation with Wright,"  [report at 3] and this court agrees with plaintiff that this proposed testimony runs afoul of the above-cited precedent.  In so stating, this court is not suggesting that Stewart's conclusion is necessarily an unreasonable one, indeed, it would not be surprised if a jury reaches a similar conclusion at trial.  Ultimately, however, this court finds that making an evaluation in this regard falls within the province of a jury, and it does not regard this issue as being an appropriate subject for expert testimony.  This court further notes that, even if this subject matter were arguably within the proper scope of *some* expert's testimony, it would still fall well outside of Stewart's scope of expertise as Corecivic's Director of Security Operations.

In light of the foregoing, this court will grant plaintiff's motion to strike Stewart's proposed testimony regarding Miller's state of mind, and it will reserve a ruling regarding the remaining objections to his testimony until trial.  In so stating, this court notes that it does have concerns regarding Stewart's proposed testimony that plaintiff's reaction to having a chemical spray used against him indicated that he was not seriously injured by it.  This court has concerns that Stewart is not qualified to offer this opinion, and it therefore directs defendant not to inquire regarding this matter without first seeking this court's permission to do so.  In ruling on this matter at trial, this court may choose to question Stewart outside the presence of the jury to clarify his expertise (or lack thereof) in evaluating the reactions of inmates to having chemical spray used against them.  With this caveat, plaintiff's motion to strike will be granted in part, and this court will reserve a ruling on his remaining objections until trial.

In light of the foregoing, it is ordered that defendant's motion for summary judgment [47-1] is denied, and plaintiff's motion to strike [52-1] is granted in part and denied in part. Plaintiff's unopposed motion to dismiss [65-1] his constitutional claims is granted.

This, the 25th day of April, 2022.

        /s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**